IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHAKHZODJON MANUCHEROVICH
KHOTAMOV,

    *Petitioner*,

v.      1:26-cv-00074-DHU-KK

MELISSA ORTIZ, *et al.*,

    *Respondents*.

## ORDER GRANTING HABEAS PETITION

    This matter comes before the Court on Petitioner Shakhzodjon Manucherovich Khotamov's Petition for Writ of Habeas Corpus ("Petition"). Doc. 1. Petitioner is currently in immigration detention and alleges that he was unlawfully re-detained without due process and that his detention without the opportunity for bond violates Immigration and Nationality Act ("INA"), its implementing regulations, and his due process rights. *Id.* at ¶¶ 9-10. The Petition asks the Court to declare Petitioner's arrest and continued detention unlawful and to grant a writ of habeas corpus ordering Respondents to release Petitioner or provide him a bond hearing. *Id.* at ¶ 11. Having considered the parties' briefs and the relevant and applicable law, the Court finds that the Petition should be **GRANTED**.

**I.
BACKGROUND**

    Petitioner is a citizen of Uzbekistan who entered the United States in March of 2024. Doc. 1 at ¶ 59. Shortly after Petitioner's entry, Immigration and Customs Enforcement ("ICE") apprehended him and charged him as removable as a noncitizen present without admission or

parole. *Id.* at ¶ 60 (citing Doc. 1-2). According to the Petition, Petitioner was then released from ICE custody on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226(a). *Id.* at ¶ 61. Thereafter, he resided in the United States while applying for asylum. *Id.* at ¶¶ 62-63.

On December 15, 2025, Petitioner reported to a scheduled check-in and was arrested by ICE agents. *Id.* at ¶ 64. He is currently detained at Torrance County Detention Center in Estancia, New Mexico. *Id.* at ¶ 65 (citing Doc.1-3).

On January 15, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. In the Petition, Mr. Khotamov contends that he should be subject to detention under 8 U.S.C. § 1226(a) and entitled to a bond hearing. *Id.* at ¶¶ 9, 39-48. Instead, according to Petitioner, based upon a recent Board of Immigration Appeals ("BIA") decision, *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), he is considered subject to mandatory detention under 8 U.S.C. § 1225(b) and has no opportunity for release on bond during the pendency of his removal proceedings. *Id.* at ¶¶ 8-9. Petitioner argues that his re-detention was unlawful and that his ongoing detention without a bond hearing deprives him of his due process rights. *Id.* at ¶¶ 10, 49-58. The Petition asks this Court to:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner not be transferred during the pendency of his Petition;

(3) Issue an Order to Show Cause ordering Respondents to show cause why the Petition should not be granted;

(4) Declare that Petitioner's detention is unlawful;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner from custody or provide him with a bond hearing pursuant to § 1226(a) or the Due Process Clause within seven days;

>   (6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and
>
>   (7) Grant any further relief this Court deems just and proper.

*Id.* at 15.

On January 22, 2026, Magistrate Judge Khalsa issued an Order directing the Clerk of Court to serve the Petition on Respondents, requiring the Respondents to show cause within seven days of receipt of service, and ordering Respondents not to transfer Petitioner out of the District of New Mexico during the pendency of these proceedings. Doc. 3.

On January 29, 2026, Respondents submitted their Response. *See* Doc. 6. In the Response, the Government confirms that Petitioner was released on his own recognizance after he initially entered the country in 2024. Doc. 6 at 2. However, they assert that his Order of Recognizance was revoked. *Id.* Respondents argue that Petitioner is appropriately detained pursuant to § 1225(b)(2)(A) per guidance from the BIA in *Matter of Hurtado*, so there has been no constitutional violation. *Id.* at 1. They do not address the argument that Petitioner is entitled to release because of his previous release on his own recognizance.

On February 2, 2026, Petitioner submitted a Reply in support of his Petition. Doc. 7. In it, Petitioner reiterates his request for a bond hearing, pointing to the numerous district courts around the country who have disagreed with the Government's position regarding the detention authority for certain noncitizens. *Id.* at 2. Petitioner further argues that his re-detention without a pre-deprivation hearing violated his due process rights and warrants immediate release. *Id.* at 3, 13.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing he is being unlawfully detained in violation of the INA, its implementing regulations, and his Fifth Amendment due process rights.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

**A. Petitioner's re-detention without a pre-deprivation hearing violated his due process rights.**

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without first providing him with a pre-deprivation hearing. Doc. 1 at ¶¶ 10, 36; Doc. 7 at 11-12. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. See *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

1. <u>Petitioner Possesses a Protected Liberty Interest.</u>

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). See *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled "him to do a wide range of things," including to apply for asylum and to "be with family and friends and form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody two years ago. Doc. 1 at ¶¶ 59-63. Recognizing the relationships and obligations one takes on while living in the United States, this Court has held numerous times that noncitizens released from custody on their own recognizance develop a liberty interest in their continued release. *See Singh v. Carnes*, No. 1:26-cv-00235-DHU-GJF (D.N.M. Mar. 3, 2026) (granting habeas petition after finding petitioner had liberty interest in release after previous release on his own recognizance); *Garcia Domingo v. Castro*, 806 F.Supp.3d 1246 (D.N.M. 2025) (at TRO stage, finding substantial likelihood that noncitizen had a liberty interest in release after previous release); *Chu v. Lyons et al.*, No. 1:26-cv-275-DHU-JHR (D.N.M. Feb. 10, 2026) (at TRO stage, finding the same). The parties have not identified, and the Court cannot find, any distinction in the facts of this case warranting a different conclusion.

2. <u>A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.</u>

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews*

*v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

      Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As mentioned previously, Petitioner was out of immigration custody for nearly two years before being re-detained by ICE, during which time his interest in release certainly grew stronger as he lived freely and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial. *See* Doc. 1 at ¶ 52.

      With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has provided only a cursory explanation for why re-detention is necessary. *See* Doc. 6-2 at 3 (explaining that Petitioner was re-detained because bedspace became available). As Petitioner suggests, *see* Doc. 7 at 12, a pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him. Respondents did submit Petitioner's I-213 form, which indicated that his "Order of Recognizance was canceled following appropriate procedures[.]" Doc. 6-2 at 2. However, the form does not specify what those procedures were and whether they complied with statutory, regulatory, and/or constitutional

6

requirements for revoking a noncitizen's release. The Government also does not dispute Petitioner's allegation that he was not provided a pre-deprivation hearing. Instead, Respondents rest their argument on the fact that Petitioner is subject to § 1225 and therefore has no due process rights independent of the statute. Doc. 6 at 3-4, 14. This argument does nothing to attenuate the Court's concern of an erroneous deprivation of Petitioner's rights.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent proper procedures is low. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

**B. Petitioner's ongoing detention without a bond hearing is also unlawful.**

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. In fact, the Court has already considered the statutory and constitutional issues raised by Petitioner with regard to §§ 1225 and 1226. *See Requejo Roman v. Castro et al.*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos et al.*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 (D.N.M. Feb. 2, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293 (D.N.M. Feb. 5, 2026). Because the facts here are not materially different than those the Court analyzed in previous cases, the Court's conclusion is the same. Mr. Khotamov, who entered the

United States without inspection, was arrested inside the United States after entering, and was released on his own recognizance thereafter, is properly detained pursuant to 8 U.S.C. § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman v. Castro et al.*.

### C. Immediate release is the appropriate remedy.

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—the Government's initial re-detention of Petitioner without due process of law. *See, e.g., E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."). In its Response, the Government fails to address this aspect of Petitioner's claim and presents no arguments about the appropriate remedy in this case. *See* Doc. 6.

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone violates their due process rights. *Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the appropriate remedy was release); *Singh v. Carnes*, No. 1:26-cv-00235-DHU-GJF (D.N.M. Mar. 3, 2026) (finding the same); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (same); *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246 (D.N.M. 2025) (at TRO stage, ordering immediate release of petitioner previously released by ORR and re-detained without a pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, 2026 WL 91470, at *13 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by ORR not to be a flight risk or danger); *Faizyan v. Casey*, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under

*Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate release); *Chipantiza-Sisalema v. Francis*, 2025 WL 1927931, at *4 (S.D.N.Y. July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same here and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within twenty-four hours of this Order and subject him to the same terms as his original Order of Release on Recognizance. Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that revocation of Petitioner's release is warranted and that he is a danger to his community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Friday, March 13, 2026, confirming Petitioner's timely release.

Should Petitioner wish to recover costs of suit and attorney's fees, he may submit an application for such costs and fees within 30 days of this Order pursuant to 28 U.S.C. § 2412. Respondents may respond to Petitioner's application no later than 14 days after Petitioner's application is filed with this Court.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE